IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:13cv673-SRW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Amy Williams brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff contends that the ALJ erred by rejecting medical opinions of record without stating adequate reason for doing so, and with no contradictory evidence of record to support her RFC finding.  Plaintiff takes issue with the ALJ's treatment of the opinions expressed by Dr. Cook, plaintiff's treating physician, in Clinical Assessment of Pain and Physical Capacities Evaluation forms (Plaintiff's brief, pp. 9-15; see Exhibits 7F and 8F), and also the opinions expressed by psychologist Fred George, Ph.D., in his report of his post-hearing consultative mental examination and WAIS-IV testing of the plaintiff.  (Plaintiff's brief, pp. 4-9; see R. 78-79, 311-17).

Dr. George reports that plaintiff's WAIS-IV testing yielded a full scale IQ score of 57, a score that – according to Dr. George – is "in the mildly retarded range of functioning." (R. 312).  Dr. George's diagnoses include depressive disorder and anxiety disorder on Axis

I and, on Axis II, "Mild Mental Retardation." (R. 313). Dr. George reports that plaintiff "was cooperative and the evaluation is considered valid." (Id.). He concludes that plaintiff "would require assistance in managing her own funds and would have difficulties living independently. He further indicates that she "has the intellectual ability to function in a supportive work environment" but "[i]n an independent competitive work setting she would likely be unable to understand, carryout [sic] and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting." (Id.). Dr. George completed a medical source statement in which he assessed "Moderate" limitations in plaintiff's ability to understand, remember, and carry out simple instructions and "Marked" or "Extreme" limitations in all other rated work-related mental functions, due to plaintiff's "[v]ery low intellectual functioning[,]" anxiety, depression, and chronic pain. (R. 314-15).

As to the ALJ's consideration of Dr. George's opinion, plaintiff argues, in part:

> The ALJ also indicates "the record lacks any evidence of deficits in intellectual functioning noted during previous discussions leading to previous medical procedures" (Tr. 34). Although, it's unclear what exactly the ALJ is referring to with this statement, there is nothing in the evidence to indicate Ms. Williams' intellectual abilities had ever been sufficiently tested or evaluated to justify a rejection of Dr. George's opinion. The 11th Circuit held in Mulholland [v. Astrue, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008)] the fact that there was no documentary evidence that Plaintiff had an IQ score of less than 70 before 22 does not contradict the examining psychologist's findings, noting that the results of an IQ test create a *rebuttable presumption* that mental retardation developed before the age of 22. Id., citing Hodges v. Barnhart, 276 F.3d 1265, 1267 (11th Cir. 2001).

(Plaintiff's brief, p. 9)(emphasis in original). Plaintiff then adds – in a footnote – that, "[a]dditionally, the ALJ erred in her step three findings when considering whether Ms.

3

Williams met Listing 12.05, as she rejected her scores simply because "'there is no evidence of any deficits in adaptive functioning prior to age 22.'" Id. at p. 9 n. 1.[1]

As to the latter argument, the Commissioner responds that the ALJ was not required to find the plaintiff disabled under Listing 12.05(B), despite the full scale IQ score of 57, as the ALJ may "'conclude[] from other evidence in the record that the I.Q. scores are inconsistent with the plaintiff's actual functioning[.]'" (Commissioner's brief, p. 9)(citation omitted). The Commissioner points out that "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record of the claimant's activities and behavior" and, also, that "the listings do not require the Commissioner to make a finding of mental retardation based on the results of an IQ test alone, and may properly disregard standardized IQ test scores where [they] are inconsistent with daily activities and behavior." (Id. at p. 10)(citations, internal quotation marks and alteration brackets omitted). The Commissioner then cites plaintiff's continued employment "at Goodwill prior to and during the time that she claimed to be disabled" as substantial evidence supporting the ALJ's finding "that Plaintiff had only moderate limitations in

---

[1] The Commissioner urges the court to decline to consider the argument plaintiff makes in the footnote, because plaintiff "did not adequately brief it." (Commissioner's brief, p. 9). The court agrees that plaintiff could have briefed this issue more thoroughly. However, plaintiff's footnote – and the accompanying text regarding the Hodges presumption in the body of the brief – are sufficient to advise the court and the Commissioner that plaintiff contends that the ALJ erred in her step three analysis as to Listing 12.05 by failing to apply the Hodges presumption properly. Additionally, the court notes that the Commissioner re-frames the issue identified by the plaintiff as pertaining only to subsection "B" of Listing 12.05. Id. ("Plaintiff asserts in a footnote that the ALJ erred in finding that she did not meet Listing 12.05(***B***)[.]")(emphasis added). Plaintiff's argument, however, refers to "Listing 12.05" without further limitation to any particular subsection. (See Plaintiff's brief, p. 9 n. 1).

concentration, persistence or pace, and otherwise had no problems with her activities of daily living or social functioning" and concludes, therefore, that "Plaintiff did not meet Listing 12.05(B) and was not disabled." (Id., p. 10).

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Harris v. Commissioner of Social Security, 330 F. App'x. 813, 815 (11th Cir. 2009)(quoting Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997)); see also Jordan v. Commissioner of Social Sec. Admin., 470 F. App'x. 766, 768 (11th Cir. 2012)("As both the Listings and our cases make plain, a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05."). The definition of mental retardation set forth in the introductory paragraph of the Commissioner's listing[2] is derived from accepted diagnostic criteria for this mental impairment. See 65 Fed. Reg. 50746, 50760 (August 20, 2000)("[W]e used the DSM-III-R as the basis for the diagnostic criteria in our mental disorders listings because this reference manual is widely used and accepted in the psychiatric and psychological communities."); see also American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., text revision (2000)("DSM-IV-TR") at p. 41 ("essential feature" of mental retardation is significantly subaverage general

---

[2] The ALJ's decision predates the Commissioner's amendment to its listings, effective August 1, 2013, to replace the term "mental retardation" with "intellectual disability." See 78 Fed. Reg. 46499-01, 2013 WL 3936340.

intellectual functioning that is accompanied by deficits in adaptive functioning, with onset "before age 18 years").[3] As noted previously, plaintiff does not limit her argument to subsection B. Rather, she challenges the ALJ's conclusion that "'there is no evidence of any deficits in adaptive functioning prior to age 22'" (Plaintiff's brief, p. 9 n. 1)(quoting ALJ's decision at R. 27) – *i.e.*, that the evidence does not satisfy a criterion of the introductory paragraph of Listing 12.05.

In her step-three analysis as to Listing 12.05, the ALJ first determines that the criteria of subparagraph "D" of the listing are not satisfied.  (See R. 25-26)(concluding that plaintiff has experienced no episodes of decompensation and has no difficulties in social functioning, no restrictions in activities of daily living, and moderate difficulties with regard to concentration, persistence or pace).  After analyzing the "paragraph C" criteria of Listing 12.04, the ALJ "turn[s] back to listing 12.05," and reasons that:

> [t]he evidence does not substantiate the presence of mental retardation as defined by the listing.  The listing refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *In the present case, the evidence of the claimant's mental retardation is limited to a psychological evaluation and intelligence testing conducted in September 2011, when the claimant was 47 years old. (Exhibit 10F). There is no evidence of deficits in adaptive functioning prior to age 22*. While the claimant reported in September 2011 that she did not do well in regular classes, she testified at the hearing that she only attended special education classes in the first and second grades.  Therefore the claimant has not met the definition of the disorder under the listing, and the evidence, as discussed throughout this decision, does not

---

[3] In 2013, the American Psychiatric Association published the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-V").  The DSM-IV was the most current edition at the time of Dr. George's diagnosis and the ALJ's decision.

> reflect symptoms of such severity that a finding of medical equivalence would be warranted.

(R. 27)(emphasis added).

While the ALJ determined that the evidence does not satisfy the additional criteria of one of the Listing 12.05 subsections – subsection "D" – her conclusion that plaintiff's condition does not meet under any of the other subsections rests entirely, as plaintiff contends, on the ALJ's conclusion that the evidence does not show deficits in adaptive functioning before age 22. In other words, the ALJ determined that plaintiff does not satisfy Listing 12.05's "capsule" definition of mental retardation, *not* that she failed to satisfy the particular severity requirements specified in subparagraphs "B" or "C" of the listing.[4] The problem with the ALJ's analysis is that – if plaintiff's IQ scores are valid *and* indicative of her level of functioning at age 47 – she is entitled to a presumption of deficits in adaptive functioning before age 22. See Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001).[5] The

---

[4] While the same is true as to subparagraph "A," Listing 12.05(A) requires evidence of mental incapacity of such severity that "the use of standardized measures of intellectual functioning is precluded[.]" 20 C.F.R. Part 404, Subpt. P, App. 1, ¶ 12.05(A). The evidence in this case does not implicate subparagraph A. The "required level of severity" for Listing 12.05(B) is met with "[a] valid verbal, performance, or full scale IQ of 59 or less[,]" and the level of severity specified by Listing 12.05(C) is satisfied with "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Id., ¶ 12.05(B), (C).

[5] In Hodges, the ALJ had determined that the claimant had a "severe" impairment of "borderline intellectual functioning," along with other severe mental and physical impairments. Id. at 1268. WAIS testing by the consultative examiner had yielded a verbal IQ score of 67, a performance IQ score of 79, and a full scale IQ score of 72. Id. at 1267. The psychologist noted that the claimant's "higher score on the performance scale as compared to the verbal scale was consistent with her limited educational background." Id. Two non-examining psychologists concluded that the claimant was moderately limited in her ability to perform work-related mental functions. Id. The ALJ "adopt[ed] [the consultative examiner's] IQ testing as a valid assessment of Hodges' mental

ALJ does not conclude expressly that plaintiff's IQ scores are not valid or that they are not indicative of plaintiff's actual level of general intellectual or adaptive functioning and – due to contradictions in the ALJ's analysis – such findings are not implicit. On one hand, the ALJ appears to reject the IQ scores as not indicative of plaintiff's level of functioning. She notes that the consultative physical examiner, Dr. Ellis, "reported the claimant's intellectual functioning appeared normal during the examination. He stated, 'Recent and remote memory for medical events is good. The patient is able to follow simple commands and instructions without difficulty[.]'" The ALJ further reasons that "[t]he record also lacks any evidence of deficits in intellectual functioning noted during previous discussions leading to previous medical procedures." (R. 34, last paragraph)(citing Exhibits 3F and 5F). She also cites

---

capabilities at age 49," but "found no evidence supported the proposition that Hodges manifested deficits in adaptive functioning before age twenty-two as required by Listing 12.05(C)." Id. at 1268. The ALJ determined, therefore, that plaintiff did not meet the listing. Id. The Eleventh Circuit concluded that "IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life." Id. at 1268. The Eleventh Circuit wrote, "We find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." Id. at 1266-67. Panels of the Eleventh Circuit have, in unpublished opinions, applied Hodges differently. See, e.g., Garrett v. Astrue, 244 F. App'x. 937 (11th Cir. 2007)(finding no error in ALJ's failure to mention the Hodges presumption, where the ALJ found that the claimant did not meet the mental retardation listings because, despite his low IQ score, he "did not have the required deficits in adaptive functioning"); Grant v. Astrue, 255 F. App'x. 374 (11th Cir. 2007)(finding error in ALJ's failure to presume deficits in adaptive functioning before age 22 due to valid IQ score of 69 and additional physical or mental impairment imposing an additional and significant work-related limitation of function); see also Randall v. Astrue, 570 F.3d 651, 661, 661 n. 23 (5th Cir. 2009)(noting conflict between holdings of Grant and Garrett). The Garrett panel apparently understood the Hodges presumption to rest on evidence of deficits in adaptive functioning after age 22 rather than on the IQ scores alone. For the reasons stated in the discussion below, the ALJ's analysis in the present case is insufficient to permit the court to determine whether plaintiff is entitled to the Hodges presumption as applied by the Eleventh Circuit in either Garrett or Grant.

plaintiff's history of skilled and semi-skilled work.  (Id.).[6]  However, other aspects of the ALJ's analysis indicate that the ALJ found the scores to be a valid representation of plaintiff's level of general intellectual and adaptive functioning.  She cites the IQ scores – observing that they "all fell in the mildly retarded range" – within the evidence that she finds to support Dr. George's conclusion that "the claimant cannot understand, remember, and carryout [sic] complex instructions."  (See R. 34, second paragraph beginning on the page).  Additionally – and significantly – the ALJ finds expressly that plaintiff suffers from the "severe" impairment of "mild mental retardation." (R. 24).[7]

If a claimant has evidence of an IQ score that falls within the ranges specified in the subsections of Listing 12.05, the ALJ may either reject the IQ score as not valid or find that the score is not conclusive of mental retardation in view of other evidence of the claimant's functioning.  However, the ALJ must do one or the other.  See Thomas v. Barnhart, 2004 WL 3366150 (11th Cir. Dec. 7, 2004)(reversing Commissioner's decision because the ALJ "neither rejected the I.Q. score of 69 nor determined that it was inconclusive of mental

---

[6] The Eleventh Circuit has found a history of semi-skilled work to support an ALJ's conclusion that a claimant does not function within the mental retardation range, despite the existence of IQ scores in that range.  See Outlaw v. Barnhart, 197 F. App'x. 825 (11th Cir. 2006); see also Humphries v. Barnhart, 183 F. App'x. 887, 889 (11th Cir. 2006)(finding substantial evidence supporting the ALJ's conclusion that plaintiff – who had an IQ score of 65 – did not have deficits in adaptive functioning, where the claimant had a 21-year history of work in a school cafeteria, serving as manager/supervisor for fifteen years).

[7] The Commissioner's argument that low IQ scores do not require that the ALJ make a finding of mental retardation (see Commissioner's brief, pp. 9-10) fails to account for the ALJ's express finding that plaintiff suffers from the "severe" impairment of "mild mental retardation." (R. 24). Whether the ALJ might have concluded otherwise on the present record is irrelevant to this court's review.

retardation"). The ALJ's failure to do either in the present case is critical because such findings determine whether plaintiff is entitled to the Hodges presumption and, therefore, meets the definition of mental retardation set forth in the introductory paragraph of Listing 12.05. The ALJ's express finding that plaintiff presently suffers from the severe impairment of mild mental retardation conflicts – given the DSM's "essential" diagnostic features of this mental impairment – with the ALJ's step three finding that plaintiff does not satisfy the "capsule" definition of mental retardation in the introductory paragraph of Listing 12.05 and, also, with other aspects of the ALJ's analysis in later steps of the sequential evaluation.[8] The ALJ's conflicting conclusions have evidentiary support in the record and, thus, the court cannot affirm the Commissioner's decision without itself weighing the evidence *de novo* and determining which of the ALJ's contradictory findings should be ignored. For this reason, the ALJ's reasoning is insufficient to permit the court to conclude that she conducted the proper legal analysis, and the Commissioner's decision must be reversed. Cornelius, 936 F.2d at 1145-46.[9]

## CONCLUSION

---

[8] If plaintiff's condition meets the listing, of course, analysis of her residual functional capacity and her ability to perform past relevant work or other jobs is both unnecessary and irrelevant. See Ambers v. Heckler, 736 F.2d 1467, 1468 (11th Cir. 1984)("The interesting question on this social security appeal is whether benefits can be denied to a claimant who meets the disability listing for mental retardation but had been previously gainfully employed with that handicap. We hold that since claimant meets the listing, she is entitled to benefits regardless of the fact that she may be able to hold gainful employment as she did in the past.").

[9] The court does not reach plaintiff's remaining contentions and expresses no opinion regarding whether plaintiff is entitled to the benefits she seeks.

For the foregoing reasons, the Commissioner's decision is due to be reversed and this action remanded to the Commissioner for further administrative proceedings. A separate judgment will be entered.

DONE, this 19th day of August, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE